# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1075

_____

United States of America,

        Appellee,

v.

Jedidiah Joel Riekenberg,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska.

[UNPUBLISHED]

_____

Submitted: October 17, 2011
Filed: December 19, 2011

_____

Before MURPHY, BYE, and SMITH, Circuit Judges.

_____

PER CURIAM.

Jedidiah Riekenberg pleaded guilty pursuant to a plea agreement to being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Riekenberg to five years' probation. One of the conditions of Riekenberg's probation was that he "have no contact, direct or indirect, with [his ex-girlfriend] unless approved in advance by the Probation Office." While on probation, Riekenberg violated this condition and ultimately pleaded guilty to doing so. The district court sentenced Riekenberg to 36 months' imprisonment. On appeal,

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Riekenberg argues that the district court failed to properly consider the factors set forth in 18 U.S.C. § 3553(a) and the sentencing recommendations in Chapter 7 of the Guidelines. Additionally, he asserts that his sentence is unreasonable because it is greater than necessary to promote the goals of § 3553(a). We affirm.

I. *Background*

On December 9, 2008, Riekenberg's ex-girlfriend, who is also the mother of his child, contacted the Lincoln Police Department (LPD). The ex-girlfriend stated that a despondent Riekenberg had sent her a photograph, via email, of Riekenberg holding a gun to his own head. According to the ex-girlfriend, she had previously obtained a protective order against Riekenberg. The LPD contacted Riekenberg and subsequently took him into emergency protective custody. Riekenberg refused consent to search his apartment. The LPD secured Riekenberg at the Lincoln Regional Center (LRC) and waited to obtain a search warrant early the next morning. Thereafter, LPD officers received information that Riekenberg had placed a phone call at the LRC asking someone to "get it out of my apartment." The LPD, concerned that Riekenberg was referring to a weapon, secured the apartment as quickly as possible and obtained a search warrant for the apartment. During a search of Riekenberg's apartment, law enforcement found 85 rounds of Remington Thunderbolt .22 caliber ammunition but no weapon. The Bureau of Alcohol, Tobacco, Firearms, and Explosives determined that the ammunition was manufactured outside of the State of Nebraska.

Riekenberg was indicted for and pleaded guilty to being a felon in possession of ammunition, in violation of § 922(g)(1).[2] At the time that Riekenberg pleaded guilty, he provided information, pursuant to a proffer agreement, to the LPD, which

---

[2]Riekenberg had two prior felony convictions in the District Court of Lancaster County, Nebraska. On January 12, 2004, Riekenberg was convicted of possession of a controlled substance and a felon attempting to possess a deadly weapon.

enabled the LPD to find the handgun that was in Riekenberg's house on December 9, 2008.

On March 5, 2010, the district court sentenced Riekenberg to five years' probation after granting Riekenberg's motion for a downward variance from the Guidelines range of 21 to 27 months' imprisonment. According to the district court, it imposed a sentence outside of the Guidelines range because Riekenberg "ha[d] already served more than a year in jail pending resolution of this case." The court noted the parties' recognition that Riekenberg "needed a long term, inpatient dual diagnosis program that could not be supplied in prison and that a prison sentence would likely frustrate [Riekenberg's] entry into such a program." "Given the jail time already served by [Riekenberg]," the district court concluded that "the best alternative" was a sentence of probation "and the emphasis on a treatment of the mental illness and drug addiction." Because of the nature of the allegations and the effect on Riekenberg's ex-girlfriend, the district court imposed a special condition of supervision, which Riekenberg agreed to, stating that Riekenberg "shall have no contact, direct or indirect, with [his ex-girlfriend] unless approved in advance by the Probation Office."

On November 29, 2010, the probation office filed a "Petition for Warrant or Summons for Offender Under Supervision" alleging that "[b]etween October 1, 2010, and October 26, 2010, Jedidiah Riekenberg had indirect contact with [his ex-girlfriend] when he located a male friend of [his ex-girlfriend's] on her Facebook page and sent electronic messages to him on three occasions." According to the petition, "Riekenberg admitted to his probation officer that he contacted the friend by sending the messages."

At the revocation hearing, Riekenberg admitted to the allegations. Riekenberg stated that he sent emails to his ex-girlfriend's male friend between October 1 and October 26, 2010. Riekenberg explained that he first emailed the male friend to

"support him being with" the ex-girlfriend and "make sure that he was good to [Riekenberg's] child if he's going to be around her." Riekenberg testified that, after sending the first email, he subsequently became "frustrated and posted some inappropriate pictures of [his ex-girlfriend] on a couple websites." Thereafter, he sent a second email to the male friend explaining that he had posted the pictures because he wanted to "come clean and be honest about it." Riekenberg stated that he had contacted the male friend in an effort to apologize to his ex-girlfriend for what he had done. Riekenberg admitted that the district court had previously warned him during sentencing for his prior offense that any indirect contact with his ex-girlfriend would result in a prison sentence.

Following Riekenberg's testimony, the district court expressed its inclination to vary upward from the Guidelines range of six to 12 months and sentence Riekenberg to 36 months' imprisonment, but the court permitted Riekenberg and his attorney to argue for a lesser sentence. Riekenberg cited the progress that he had made since his initial sentencing, including the fact that he had reestablished a relationship with his family, had a full-time job, was sober, and was continuing with psychiatric counseling, including anger management. Riekenberg's counsel also pointed out that Riekenberg was currently paying $500 a month in child support to his ex-girlfriend, which would cease if Riekenberg were incarcerated. Counsel also emphasized Riekenberg's need for continued counseling and argued that the content of the emails was not threatening.

After hearing argument, the district court imposed a sentence of 36 months' imprisonment, stating:

> To reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment, and to afford deterrence, recognizing that the guidelines are advisory and considering the statutory goals of sentencing, and noting that the defendant was previously a beneficiary of a downward departure or other unusual form of leniency, I now

-4-

revoke the defendant's conditions of supervised release and I sentence him to 36 months in prison with no supervised release to follow.

[Riekenberg's counsel] has made an impassioned and reasoned argument about why I should not sentence Mr. Riekenberg to prison. I have—I have elected to do just the opposite of what [Riekenberg's counsel] suggested.

If Mr. Riekenberg has made progress, and I think perhaps he has in some aspects, then understanding that there are consequences to action is a fundamental aspect of a mature human being.

If Mr. Riekenberg leaves prison understanding that he went to prison solely and only because of his actions and then tries to build upon the progress that he says he has made, he will have taken a huge step toward becoming a mature and functioning adult.

If on the other hand he blames other people, he blames his illness, he then—nothing that we have done will have made any difference.

And fundamentally when I say something as a Judge, I mean it.

\*\*\*

And I meant it when I told Mr. Riekenberg that I would throw him in prison if he violated his conditions of supervised release. And he did.

After the court imposed the sentence, it asked whether the parties "wish[ed] any further elaboration of [the court's] statement of reasons." Riekenberg's counsel replied, "No, Judge." Thereafter, the court asked counsel whether there was "anything [the court] should know from [Riekenberg]," as the court noticed that Riekenberg "was trying to speak." Riekenberg's counsel responded, "Well, he wants you to reconsider and give him somewhere between six and 12 months." The court declined to reconsider the sentence.

## II. *Discussion*

On appeal, Riekenberg argues that the district court failed to properly consider the factors set forth in 18 U.S.C. § 3553(a) and the sentencing recommendations in Chapter 7 of the Guidelines. Additionally, he asserts that his sentence is unreasonable because it is greater than necessary to promote the goals of § 3553(a).

"We review a district court's revocation sentence under the same abuse of discretion standard applied in initial sentencing decisions." *United States v. Shepard*, 657 F.3d 682, 685 (8th Cir. 2011). In reviewing the imposition of a sentence, we must first determine whether the district court committed "significant procedural error," which includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, *failing to consider the § 3553(a) factors*, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Boneshirt*, __F.3d__, 2011 WL 5119469, at *7 (8th Cir. Oct. 31, 2011) (quotations and citations omitted) (emphasis added).

Here, Riekenberg argues that the district court did not properly consider the § 3553(a) factors or the sentencing recommendations in Chapter 7 of the Guidelines, which is an allegation of procedural error. *See id*. But Riekenberg "failed to object at sentencing to any alleged procedural sentencing error," *United States v. Townsend*, 618 F.3d 915, 918 (8th Cir. 2010) (quotation and citation omitted), even when the district court asked if the parties needed "further elaboration of [the court's] statement of reasons." "[Riekenberg's] failure to timely object to such alleged error means that the error is forfeited and may only be reviewed for plain error." *Id*. (quotation and citation omitted). Thus, Riekenberg must demonstrate "(1) an error; (2) that is plain; and (3) that affects substantial rights." *Id*. (quotation and citation omitted). Even if Riekenberg is able to satisfy these three conditions, "we may exercise our discretion to correct a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (quotation and citation omitted).

Contrary to Riekenberg's argument, "[t]he district court's sentencing colloquy shows it considered the § 3553(a) factors and those that [Riekenberg] offered." *United States v. Villarreal-Colin*, 435 F. App'x 572, 574 (8th Cir. 2011) (unpublished per curiam). In its sentencing colloquy, the district court quoted § 3553(a)(2) and acknowledged the request of Riekenberg's counsel for a more lenient sentence. "The court's reference to certain factors does not show it failed to consider others." *Id*. Furthermore, "[t]he district court has wide discretion in weighing the § 3553(a) factors and may assign some factors greater weight than others in imposing an appropriate sentence." *Id*. We do not require a district court to mechanically recite the § 3553(a) factors, "so long as it actually considered them." *Id*.

Because no procedural error exists, we next "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Boneshirt*, 2011 WL 5119469, at *7 (quotation and citation omitted). Riekenberg contends that his sentence is greater than necessary to promote the goals of § 3553(a) and is therefore unreasonable. In assessing the substantive reasonableness of a sentence, we consider the totality of the circumstances, which includes "the extent of any variance from the Guidelines range." *Id*. (quotation and citation omitted). Where, as here, the sentence falls outside of the Guidelines range, "we may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id*. (quotation and citation omitted).

Based on our review of the record, we conclude that the district court did not abuse its discretion in sentencing Riekenberg to 36 months' imprisonment. Riekenberg admitted to violating the terms of his probation by having indirect contact with his ex-girlfriend. He further admitted to placing inappropriate pictures of her on websites and informing her male friend of this conduct. As explained *supra*, the district court heard and acknowledged Riekenberg's argument for a more lenient sentence and also considered the § 3553(a) factors. Moreover, when the district court previously

sentenced Riekenberg, it put him on notice that any direct or indirect contact with his ex-girlfriend would result in a prison sentence. In imposing the 36-month sentence, the district court explained that it "meant it when [the court] told Mr. Riekenberg that [it] would throw him in prison if he violated his conditions of supervised release. And he did."

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____